IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**MARCUS L. WALKER**                                                                                   **PLAINTIFF**

**V.**                                          **CAUSE NO.: 1:08CV146-SA-JAD**

**KIMBERLY-CLARK CORPORATION and**
**KIMBERLY-CLARK CORPORATION PENSION PLAN**        **DEFENDANTS**

## MEMORANDUM OPINION

Plaintiff filed a Complaint on May 27, 2008, to recover payments allegedly due under a total and permanent disability pension benefit policy. Neither party disputes that this action is covered under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Section 1001, *et seq*. The parties filed cross-motions for summary judgment [23, 26]. After reviewing the pleadings, motions, responses, rules, and authorities, the Court makes the following findings:

*Factual and Procedural Background*

Marcus L. Walker began his employment with the Kimberly-Clark Corporation ("Kimberly-Clark") on April 15, 1985. While at Kimberly-Clark, Plaintiff held a medium physical demand level position as a Process Technician. In this position, Plaintiff was required to frequently climb, bend, stoop, stand, and twist. He was required to occasionally lift up to fifty pounds, reach above his shoulders, and sit.

On February 17, 2005, Plaintiff took a leave of absence due to overwhelming fatigue, weakness, and thyroid problems. Plaintiff contends he became totally disabled as of this date. Temporary disability benefits were paid to Plaintiff from February 20, 2005 through August 20, 2005. Plaintiff was thereafter approved for and paid Long Term Disability benefits. On February 7, 2006, Plaintiff applied for Total and Permanent Disability ("T&PD") pension benefits

commencing March 1, 2006.

Kimberly-Clark offers T&PD pension benefits through the Kimberly-Clark Pension Plan ("the Plan"). The Plan is governed by ERISA and gives the Kimberly-Clark Retirement Committee ("the Committee" or the "Administrator")[1] the exclusive responsibility and sole discretionary authority for determining eligibility for Plan benefits. The Plan provides T&PD benefits to eligible employees whose employment is terminated "by reason of becoming <u>Totally and Permanently Disabled</u>." The Plan further defines "totally and permanently disabled" as "[a] condition arising out of injury or disease which the Committee determines is permanent and prevents an <u>Employee</u> from engaging in any occupation with his <u>Employer</u> commensurate with his education, training and experience . . .."

Under the Plan, initial benefit determinations are made by a subcommittee comprised of three Kimberly-Clark employees who are not members of the Retirement Committee. The Subcommittee may request independent medical evidence of disability through a Functional Capacity Evaluation ("FCE"), an Independent Medical Evaluation ("IME"), or an independent review of the applicant's T&PD benefits claim by Aetna U.S. Healthcare ("Aetna"), an entity unaffiliated with the Plan in any way. Appeals are taken to the Kimberly-Clark Retirement Committee, which reviews the claim without regard to the determinations or findings of the Subcommittee.

The Kimberly-Clark Retirement Subcommittee denied Plaintiff's request for T&PD benefits by letter dated March 1, 2006. Walker appealed that decision to the Kimberly-Clark Retirement Committee, which denied his appeal by letter dated June 8, 2006. In the denial letter, the Retirement Committee offered Walker the chance for a "special review" - an extra appeal - if he would provide

---

[1] The Retirement Committee is comprised of three Kimberly-Clark employees.

additional documentation to support his claim of permanent disability. Walker submitted additional documents, but the Committee again denied his claim by letter dated October 23, 2006.

*Standard of Review*

Summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)(2). No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v.Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id., 106 S. Ct. 2505. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50, 106 S. Ct. 2505 (citations omitted).

ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." Metro. Life Ins. Co. v. Glenn, — U.S. —, 128 S. Ct. 2343, 2346, 171 L. Ed. 2d 299 (June 19, 2008) (citing 29 U.S.C. § 1001, *et seq*.; § 1132(a)(1)(B)). When reviewing a denial of benefits made by an ERISA plan administrator, the Court applies a *de novo* standard of review, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989). Here, the total and permanent disability pension benefit plan clearly empowers the Retirement Committee with discretionary authority to determine eligibility for benefits and to construe the pension plan terms. Accordingly, this Court

3

must apply an abuse of discretion standard to review the decision to deny Plaintiff's claim for T&PD benefits. Id.

Walker asserts that the standard of review this Court must employ is one less deferential to the Committee's determination. Walker contends that the Administrator occupies a dual role: determining whether T&PD benefits are due and then paying the benefits if granted. The United States Supreme Court has recognized that a conflict of interest arises from the dual role of an entity acting as an ERISA plan administrator and also as a payer of plan benefits. Glenn, 128 S. Ct. at 2347, 171 L. Ed. 2d 299. The Court held that such a dual role is a factor to consider in determining whether the plan administrator has abused its discretion in denying benefits. Id. However, the plaintiff bears the burden to submit evidence that the administrator's decision was actually tainted by self-interest. Id. at 2351, 171 L. Ed. 2d 299.

The Plan's assets are held in a trust and managed by a trustee. The Plan expressly prohibits using the trust assets for any purpose "other than for the exclusive benefit of Employees and their beneficiaries." Walker has not alleged that the Plan Administrator has any control or influence over the Plan's assets. Because Walker has presented no evidence to establish any conflict between the Plan Administrator and the Plan Trust, the Court reviews the Committee's decision with substantial deference. McDonald v. Hartford Life Group Ins. Co., 2010 U.S. App. LEXIS 1199, *25 (5th Cir. Jan. 19, 2010) (if claimants do not present evidence of the degree of conflict, the court will generally find that any conflict is not a significant factor); Holland v. Int'l Paper Co. Ret. Plan, 576 F.3d 240, 249 (5th Cir. 2009) (finding that where claimant "adduced no evidence . . . that [administrator's] conflict affected its benefits decision or that it had a history of abuses of discretion," any conflict was insignificant in abuse of discretion analysis).

4

In analyzing whether the plan administrator abused its discretion, "the law requires only that substantial evidence support a plan fiduciary's decision." See Ellis v. Liberty Life Assurance Co. of Boston, 394 F.3d 262, 274 (5th Cir. 2005). "If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary or capricious," the Fifth Circuit instructs, "it must prevail." Corry v. Liberty Life Assurance Co. of Boston, 499 F.3d 389, 398-99 (5th Cir. 2007) (citation omitted). The Fifth Circuit counsels:

> Substantial evidence is more than a mere scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . .. An arbitrary decision is one made without a rational connection between the known facts and the decision or between the facts and the evidence . . .. Ultimately, "[the Court's review] of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness-even if on the low end."

Id. (citations omitted). Thus, if the administrator's decision to deny the claim is supported by "'some *concrete evidence* in the administrative record,'" the administrator did not abuse discretion. Lain v. UNUM Life Ins. Co. of Am., 279 F.3d 337, 342 (5th Cir. 2002) (quoting Vega v. Nat'l Life Ins. Servs, Inc., 188 F.3d 287, 302 (5th Cir. 1999) (en banc)). The Court's review of factual determinations under the abuse of discretion standard is limited to the evidence contained in the administrative record. The Court may not open the record and conduct discovery as to these determinations, or indulge in fact-finding. See Gooden v. Provident Life & Accident Ins. Co., 250 F.3d 329, 333 (5th Cir. 2001) (noting, as an exception to this general rule, that a district court may consider evidence outside the administrative record if it will assist the court in understanding the medical terminology or practice related to the claim); Vega, 188 F.3d at 299.

*Administrative Claim Process*

*A. Initial Claim*

Plaintiff submitted his election for T&PD retirement benefits on February 7, 2006, on the basis of Chronic Fatigue Syndrome ("CFS") and Thyroiditis. In support of his claim, Plaintiff tendered a Physician's Statement of Permanent Disability from his family physician, Dr. Leonard Pratt. Dr. Pratt listed two additional treating physicians and checked the following areas of impairment: hematopoietic system; respiratory system; mental and behavioral disorders; endocrine system; and ear, nose, throat and related structures. Dr. Pratt assessed Plaintiff as being able to stand, walk, sit, and drive for only one to four hours daily. He noted that Plaintiff was able to bend, kneel, climb, twist, reach, and lift not more than twenty pounds above his shoulder level occasionally. Dr. Pratt noted that Plaintiff had a severe limitation of functional capacity and was incapable of minimal sedentary work. Further, Dr. Pratt concluded that Walker had severe fatigue and weakness, an ongoing history of thyroiditis, a history of being unable to deal with any stress, and was being evaluated by an endocrinologist. Dr. Pratt observed that the identified restrictions were not permanent.

In addition to Dr. Pratt's Statement of Permanent Disability, the Subcommittee also reviewed a Functional Capacity Evaluation of Walker performed in August of 2005 when Plaintiff attempted to join a work hardening program. The Occupational Therapist noted several instances in which Walker complained of weakness and fatigue throughout the evaluation. Based on the evaluation and test results, the FCE concluded that Walker's "performance would appear to be in the Light-Limited Medium work level." The evaluator noted that "I do not feel this should be listed as a permanent restriction . . .."

The Subcommittee also had Dr. Pratt's Statement and the FCE reviewed by Nurse Lenore M. Poggioli. Based on the FCE results and Dr. Pratt's indication that Walker's restrictions were not permanent and that other treatment options were ongoing, Poggioli recommended that Walker's T&PD retirement application be denied. Aetna also evaluated Walker's claim and recommended denial of his T&PD benefits. In reaching that final recommendation, Aetna commented that Walker had not reached maximum medical improvement, and Walker's subjective complaints of weakness and fatigue had not been objectively substantiated.

The Subcommittee met on February 28, 2006, and denied Walker's claim for T&PD benefits by letter dated March 1, 2006. The denial noted that the medical documentation submitted on his behalf was insufficient to indicate that Walker was totally and permanently disabled as defined by the Plan. Specifically, the Subcommittee outlined the following reasons for the denial:

> 1. Based on the medical information provided your restrictions are not considered permanent.
>
> 2. Based on the information provided to the [Subc]ommittee, the [Subc]ommittee has insufficient information to determine whether your condition is permanent *and* prevents you from engaging in any occupation with Kimberly-Clark commensurate with your education, training and experience. For example:
>
> - At this time, you are not considered to have reached maximum medical improvement since your doctor indicated that a second endocrinology opinion and the possibility of a thyroidectomy is pending.
> - Medical information submitted does not support permanent restriction of your functional capabilities.

The denial letter further provided that on appeal, Walker could submit any additional written comments, documents, records, or other information relevant to his claim. Walker also had access to all documents, records and information relevant to his claim free of charge upon request.

7

Moreover, Walker was encouraged to submit on appeal all medical documentation relative to his case that would indicate that his condition was permanent. The Aetna Evaluation was provided as an attachment to the March 1, 2006, letter.

*B. Appeal*

On March 29, 2006, Walker appealed the Subcommittee's denial. He enclosed two documents to be added to his claim file: a handwritten statement from Dr. Leonard Pratt, and a Physical Assessment form completed by Dr. Pratt. The handwritten note explained that Dr. Pratt made a mistake on his Physician Statement by noting that Walker's condition was not permanent. Dr. Pratt clarified that Walker's physical limitations were permanent. Moreover, he administered a Physical Residual Functional Capacity Assessment in which Dr. Pratt noted that Walker has "severe fatigue and weakness" and a "limited ability to walk and stand," which renders him "unable to function in any work environment at this time." Walker wrote, "As you can see from these two documents, my conditions as diagnosed and treated by Dr. Leonard Pratt is [sic] Permanent in nature."

Aetna again reviewed Walker's file on appeal. The evaluator noted that "[b]asically, there is no new information submitted on appeal except for the general practitioner stating that the physical limitations are permanent." Thus, Aetna's recommendation was to deny the T&PD benefit request because no objective findings, including diagnostic tests or other investigative studies, were made to substantiate Walker's subjective complaints. Aetna further noted that the attending physician "states that the employee is permanently disabled but his medical condition does not significantly affect his ability to carry out most routine activity."

The Retirement Committee sought a recommendation from an independent medical doctor

pursuant to the Plan provisions. Dr. Smith reviewed Walker's file and stated that "there are no testing reports and findings provided to support the employee's subjective complaints of fatigue and weakness, nor are there any findings on physical examination regarding muscle strength, tone or atrophy." Therefore, he agreed with Aetna's recommendation to deny T&PD benefits on appeal.

After reviewing the case file, and the documentation submitted on appeal, the Retirement Committee denied Plaintiff's T&PD benefits appeal. The Committee noted that Walker had not submitted any testing reports or findings to support his subjective complaints of fatigue and weakness, "nor were there any findings on physical examination regarding muscle strength, tone or atrophy." Thus, based on the information submitted, "the Committee was unable to determine that [Walker is] totally and permanently disabled."

*C. Special Review*

Kimberly-Clark Pension Plan Retirement Committee procedures allow for a one-time special review if the employee has additional information to submit that would affect the claim. Walker took advantage of this process and submitted his request for a final review on or about October 3, 2006. Attached to his request for review, Walker submitted an unidentified form completed by Maxie L. Gordon. There is no indication on the form as to Gordon's title, specialty, or qualifications. That form identifies several mental and psychological limitations which, Gordon concludes, pose "little likelihood of [Walker] returning to work due to both the chronic fatigue and associated medical problems."

After reviewing Gordon's conclusions, the Aetna evaluator noted that Walker's stated inability to perform any occupation is

> based primarily on subjective symptoms[,] i.e.[,] severe weakness, fatigue and severe

9

low back pain. Physical examination findings regarding muscle strength, tone and atrophy have not been submitted. Objective findings to include diagnostic testing or any other investigative studies to substantiate the subjective findings are not provided in the appeal application.

Moreover, "[t]here is insufficient clinical information to support total and permanent disability due to a mental/nervous disorder. The attending physician lists limitations, but there is no clinical documentation available for review that would offer support to the limitations, such as a GAF (Global Assessment of Functioning) score." Thus, Aetna again recommended that the Retirement Committee deny the T&PD benefits on appeal.

Dr. Smith also reviewed Gordon's evaluation and Aetna's recommendation and agreed that the T&PD benefits should be denied as there "is insufficient clinical information to support disability due to a mental/nervous disorder."

The Committee issued its final denial letter on October 23, 2006. In that letter, the Committee remarked that based on the appeal letter and unidentified form completed by Maxie L. Gordon, as well as all other evidence previously submitted, Plaintiff failed to prove he was totally and permanently disabled. The letter further explained:

> No information was submitted regarding the duration of your condition or whether it was expected to be permanent. No additional information was submitted to support your symptoms of fatigue and weakness. The information submitted was not sufficient to support that you had permanent restrictions due to a mental/nervous disorder. Although the attending physician listed limitations, no clinical documentation was provided to support such limitations.

*D. Post-Appeal Evidence*

Walker sent additional information after the final determination to deny T&PD benefits had been made by the Committee. In particular, Walker submitted a letter from Dr. Pratt dated October 2, 2006, and a letter from Rickey Thompson, Lee County Justice Court Judge, dated June 20, 2006.

Dr. Pratt's letter was a restatement of his earlier positions, and Thompson's letter was a personal account of Walker's physical deterioration over the past years. The Committee issued a letter to Walker on October 26, 2006, stating that the documents were not received in time, and therefore, were not able to be considered in its final determination.

This Court, likewise, can not consider this evidence to determine whether the administrator's decision was arbitrary and capricious. See Vega, 188 F.3d at 299.

*Discussion and Analysis*

*A. Proper Parties*

Walker brings this ERISA action to challenge the administrator's decision under 29 U.S.C. § 1132(a)(1)(B), which allows an ERISA plan participant to bring a civil action to recover benefits due him under the terms of the plan. Walker alleges that he suffers from a total and permanent disability as defined in the Plan, and is entitled to T&PD benefits under the Plan. Plaintiff brings this action against his employer, the Kimberly-Clark Corporation, as well as the Kimberly-Clark Corporation Pension Plan. Kimberly-Clark Corporation contends that it is not a proper party to this action.

Although the Fifth Circuit has not addressed the issue, district courts in this Circuit have agreed with the Ninth Circuit that the Plan is the only proper defendant in a suit to recover benefits. See Haydel v. HealthSmart Benefit Solutions, Inc., 2009 U.S. Dist. LEXIS 77805 (E.D. La. Aug. 28, 2009); Sullivan v. Monsanto Co., 555 F. Supp. 2d 676, 685 (E.D. La. 2008); Cuccia v. Roberson Advertising Services, Inc., 2004 U.S. Dist. LEXIS 19486, at *5 (E.D. La. Sept. 27, 2008) ("the health care plan is the only proper defendant to a claim for benefits under ERISA."); Powell v. Eustis Eng'g Co., 2003 U.S. Dist. LEXIS 20046 (E.D. La. Nov. 5, 2003); Roig v. Ltd. Long Term

Disability Program, 2000 U.S. Dist. LEXIS 11379 (E.D. La. Aug. 4, 2000); Murphy v. Wal-Mart Assocs.' Group Health Plan, 928 F. Supp. 700 (E.D. Tex. 1996); Crawford v. Exxon Corp., 851 F. Supp. 242, 244 (M.D. La. 1994). Under 29 U.S.C. Section 1332(d)(1), an ERISA plan has the procedural capacity to be sued. Further, under ERISA's express terms, any money judgment obtained against the plan is enforceable only against the plan as an entity and is not enforceable against any other person unless liability against such person is established in his individual capacity. 29 U.S.C. § 1132(d)(2).

However, where the employer is the plan administrator and the employer and the plan are otherwise "closely intertwined," a plaintiff may state a cause of action against the employer for benefits due. Neuma, Inc. v. AMP, Inc., 259 F.3d 864,869 (7th Cir. 2001) (citing Mein v. Carus Corp., 241 F.3d 581 (7th Cir. 2001)); Riordan v. Commonwealth Edison Co., 128 F.3d 549 (7th Cir. 1997)). In Slaughter v. AT&T Information Systems, Inc., 905 F.2d 92, 94 (5th Cir. 1990), the Fifth Circuit endorsed this approach where an ERISA plan has no existence apart from the corporate employer and is an unfunded benefit plan self-administered by the employer. In such a situation, the plan is merely a nominal defendant with the true party in interest being the employer. See id.

Here, the Kimberly-Clark Corporation makes contributions to the Kimberly-Clark Pension Plan Trust for the distribution of benefits therefrom. The Kimberly-Clark Corporation Pension Plan is, from all indications, an entirely separate entity from the Kimberly-Clark Corporation. Plaintiff has failed to bring forth any evidence that these entities are so intertwined that the employer is the true party in interest. Accordingly, the Kimberly-Clark Corporation is dismissed as a defendant.[2]

---

[2] Plaintiff raised no objection to the dismissal of Kimberly-Clark Corporation in either its Response [32] to Defendants' Motion for Summary Judgment, or its own Motion for Summary Judgment [26].

*B. Misstatements of Fact in Claim File*

Walker contends that his T&PD benefits were denied due to the Administrator's reliance on misstatements of fact in the record. Specifically, Walker takes issue with the following two comments:

1. ". . . the attending physician states that the employee is permanently disabled but his medical condition does not significantly effect his ability to carry out most routine activities."

2. ". . . a second endocrinology opinion and the possibility of a thyroidectomy is pending."

These comments are contained in the Aetna medical evaluations dated February 13, 2006; April 26, 2006; and October 3, 2006. The evaluations were attached to the three denial letters sent by the Retirement Committee, and the alleged misstatements were made by Aetna, not the Plan Administrator. There is no proof that the claim denial was based upon those statements, or that the Administrator even considered those statements in making its decision. Moreover, the denial letters allowed Plaintiff the opportunity to supplement the record or contest any finding. Plaintiff could have corrected any alleged misstatement made with respect to the determination of his T&PD benefits. Plaintiff did not submit any documentation proving these statements to be incorrect or attempt to correct the administrative record prior to filing suit. Thus, Plaintiff's contention that the Administrator abused its discretion by relying on misstatements of fact is not well-taken.

*C. Duty to Investigate*

Plaintiff also claims that the administrator should have asked him for specific medical documentation to support his claim for T&PD benefits. He contends that the Administrator failed to investigate his medical condition itself by interviewing the Plaintiff, family, friends, coworkers, and other treating physicians. The Fifth Circuit has not recognized an administrator's duty to

13

investigate absent language in the plan documents. Dramse v. Delta Family-Care Disability & Survivorship Plan, 269 Fed. Appx. 470, 479 (5th Cir. 2008). An ERISA claimant has the initial burden of demonstrating his entitlement to benefits. Perdue v. Burger King Corp., 7 F.3d 1251, 1254 n.9 (5th Cir. 1993) (citations omitted); see also Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir. 1998) (citation omitted); Farley v. Benefit Trust Life Ins. Co., 979 F.2d 653, 658 (8th Cir. 1992) (en banc). Here, there is no language in the Plan that obliges the Plan Administrator to investigate or relieves the claimant of the burden to establish entitlement to benefits. Thus, the Administrator's failure to interview persons and request medical documentation from Plaintiff's treating physicians does not amount to an abuse of discretion under ERISA.

### *D. Objective Medical Evidence*

Walker contends the Committee arbitrarily and capriciously denied his claim on the basis that he did not submit objective medical evidence as to his disability. Courts have generally discouraged the requirement of objective medical evidence to prove diagnoses of such medical conditions as Chronic Fatigue Syndrome. Mitchell v. Eastman Kodak Co., 113 F.3d 433, 443 (3d Cir. 1997) (finding an administrator's denial based on a claimant's failure to make a showing of objective clinical evidence of the etiology of CFS arbitrary and capricious); Rose v. Shalala, 34 F.3d 13, 16-17 (1st Cir. 1994) (noting that CFS, although universally recognized as a severe disability, has no known etiology); Sisco v. U.S. Dep't of Health & Human Servs., 10 F.3d 739, 744 (10th Cir. 1993) (recognizing that in the medical and legal communities "there is no 'dipstick' laboratory test for chronic fatigue syndrome."). However, the Fifth Circuit has also held that an administrator does not abuse its discretion when it denies a claim on the basis of no objective medical evidence to prove the claimant's impaired working ability. Hernandez v. SBC Comm. Inc., 265 Fed. Appx. 276, 279

(5th Cir. 2008). The Fifth Circuit has cited with approval Boardman v. Prudential Insurance Company, 337 F.3d 9 (1st Cir. 2003) and Roach v. Prudential Insurance Brokerage, Inc., 62 Fed. Appx. 294 (10th Cir. 2003). In Boardman, the plan was willing to accept that Boardman suffered from CFS and fibromyalgia; however, the administrator wanted objective evidence that the illnesses rendered her unable to work. The Court held that "[w]hile the diagnoses of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis." Boardman, 337 F.3d at 17. The Tenth Circuit, in Roach held that

> substantial evidence supported Prudential's denial of Ms. Roach's request for . . . benefits [despite evidence that Roach suffered from chronic fatigue syndrome ]. Two independent physicians . . . concluded that Ms. Roach did not satisfy the Plan's definition of "Total Disability," insofar as she was not "unable, due to sickness or injury, to perform the material and substantial duties of [her] occupation." Accordingly, the district court properly concluded that Prudential's benefits determination was not arbitrary or capricious.

Roach, 62 Fed. Appx. at 299; see also Dennis v. Standard Insurance Company, 1994 U.S. App. LEXIS 37288 (9th Cir. Dec. 29, 1994) (stating that mere diagnosis of chronic fatigue syndrome without showing of impairment is insufficient to find an abuse of discretion); Nichols v. Verizon Comm., Inc., 78 Fed. Appx. 209, 212 (3d Cir. 2003) ("The record reveals that the denial of Nichols' claim was based on any number of factors, including the lack of objective tests demonstrating the existence of her symptoms, something a claimant with CFS might reasonably be asked to provide.").

Defendant has established that its decision to deny benefits to Walker was based on substantial evidence and not an abuse of discretion. "The law requires only that substantial evidence support a plan fiduciary's decisions, including those to deny or to terminate benefits, not that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's

15

claim of disability." Corry, 499 F.3d at 403. While Walker points to various statements by his treating physician regarding his ability to work, the Court need not give controlling weight to those opinions. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003) (rejecting a rule that would require courts to give more weight to a claimant's treating physicians).

Kimberly-Clark conducted a thorough and reasonable analysis of Walker's disability, basing its initial decision and two appeal decisions on an FCE and the opinions of two separate, independent medical personnel, as well as an unaffiliated healthcare insurer. See Corry, 499 F.3d at 402 (finding that "the medical opinions of [the plan administrator's] three consulting physicians . . . constitute substantial evidence supporting [the plan administrator's] determination that [the plaintiff] has no disability that would preclude her from performing sedentary work"). Those unaffiliated professionals noted the existence of objective tests to substantiate Plaintiff's subjective complaints. The FCE results noted that based on Plaintiff's physical limitations, he was not totally and permanently disabled. The Retirement Committee clearly stated this as a reason for denial in all three letters. Plaintiff had the opportunity to consult a physician or therapist to perform the strength, tone, and atrophy objective evaluations; however, he provided no such supplementation. Defendant did not abuse its discretion in denying Plaintiff's claim for T&PD benefits.

*E. Social Security Benefits*

In support of his claim for T&PD benefits, Walker points out to this Court that the Social Security Administration ultimately awarded him disability benefits. A plan administrator is not bound by a benefit determination by the Social Security Administration. See Dubose v. Prudential Ins. Co. of Am., 85 Fed. Appx. 371, 372 (5th Cir. 2003); Johnson v. Sun Life Assurance Co. of

Canada, 2000 U.S. Dist. LEXIS 22086, at *9 (M.D. La. Nov. 29, 2000). Moreover, this determination was not made until after the administrator's determination on special review was made, and Walker exhausted his administrative remedies. Therefore, the administrator was under no obligation to consider the Social Security benefit award in its reconsideration of the Plaintiff's claim. The Court is likewise not at liberty to consider this evidence, as it is not part of the administrative file. See Vega, 188 F.3d at 299.

*F. Procedural Requirements of ERISA*

Walker alleges that the Plan Administrator violated the procedural requirements of ERISA by not identifying the reviewing physicians pursuant to 29 C.F.R. Section 2560.503-1(h)(3)(iv). Walker did not state a cause of action for any procedural challenges to the Administrator's determination under 29 U.S.C. Section 1133 in his Complaint. Moreover, Plaintiff has not indicated what, if anything, he would have done differently, or how his claim was affected by his not knowing the identity of those medical professionals. Regardless of his failure to plead, Plaintiff's claim for failure to comply with a ERISA requirement is unfounded.

Challenges to ERISA procedures are evaluated under the substantial compliance standard. See Lacy v. Fulbright & Jaworski, 405 F.3d 254, 257 (5th Cir. 2005); Hackett v. Xerox Corp. Long-Term Disability Income Plan, 315 F.3d 771, 775 (7th Cir. 2003); Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 460 (6th Cir. 2003). This means that "technical noncompliance" with ERISA procedures "will be excused" so long as the purposes of section 1133 have been fulfilled. Robinson v. Aetna Life Ins. Co., 443 F.3d 389, 392-93 (5th Cir. 2006) (quoting White v. Aetna Life Ins. Co., 210 F.3d 412, 414 (D.C. Cir. 2000)).

The ERISA regulation that Walker contends the Kimberly-Clark Pension Plan did not comply

with provides:

> The claims procedures of a group health plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless . . . the claims procedures . . . [p]rovide for the identification of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination . . .

29 C.F.R. § 2560.503-1(b)(3)(iv).

In the denial explanation, the Administrator noted that Plaintiff had access to all documents, records, and information relevant to his claim free of charge upon request. Moreover, the initial letter outlined that the appeal Committee would "consult with a health care professional who has appropriate training and experience in the field of medicine; who was not consulted in the initial denial of benefit; and is not a subordinate of the healthcare professional who was consulted in the initial benefit denial." Further, the letter explained, the "healthcare professional shall make a medical recommendation to the Committee in his sole discretion." These statements were also present in the Plan documents. Thus, Plaintiff was aware that a medical professional was consulted during each review of his claim. He was advised that he could access those records free of charge upon request. The regulation does not explicitly require those names to be reported to the claimant, only that a procedure for obtaining the medical consultant's identity be available. According to the Regulation language cited above, Defendants have substantially complied by providing in the claims procedure a process for the identification of medical consultants.

*Conclusion*

Kimberly-Clark Corporation is not a proper party to Plaintiff's claim for benefits under Section 1132(a)(1)(B). Thus, the employer is dismissed as a party defendant.

Plaintiff has not proved that the Kimberly-Clark Corporation Pension Plan's determination and denial of T&PD benefits was arbitrary and capricious. The decision was based on substantial evidence, and the Administrator did not abuse its discretion. Defendant's Motion for Summary Judgment [23] is GRANTED, and Plaintiff's Motion for Summary Judgment [26] is DENIED.

Accordingly, judgment is entered for the Defendant.

SO ORDERED, this the 17th day of February, 2010.

                                                   /s/ Sharion Aycock
                                                   **U.S. DISTRICT JUDGE**